# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

VU V. L.,

              Petitioner,

v.

MARKWAYNE MULLIN, *Secretary, Department of Homeland Security*; TODD BLANCHE, *Acting Attorney General*; DAVID VENTURELLA, *Acting Director, Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

              Respondents.[1]

Case No. 26-cv-2947 (LMP/JFD)

**ORDER GRANTING HABEAS PETITION**

Daniel P. Suitor, **Daniel P. Suitor, PLLC, Minneapolis, MN**, for Petitioner.

David R. Hackworthy, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Vu V. L.[2] was ordered removed from the United States in January 2002. But because Vu's home country refused to accept him, he was released into the community on an Order of Supervision ("OSUP") in February 2003. Now, 23 years later, the Government has revoked Vu's OSUP and detained him in immigration custody. Vu

---

[1]      The Court refers to Respondents as the "Government" in this Order.

[2]      The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

maintains that his continued detention is unlawful. The Court agrees, so Vu's habeas petition is granted.

## BACKGROUND

Vu is a native and citizen of Vietnam who entered the United States as a refugee in 1983. ECF No. 6 ¶ 4. He became a lawful permanent resident in 1984, but after being convicted of aiding second-degree murder, he was ordered removed to Vietnam in January 2002. *Id.* ¶¶ 5–8. The Government issued a warrant for Vu's removal on October 9, 2002. ECF No. 6-3. However, Vu's removal to Vietnam was stymied by the fact that Vietnam historically did not accept the return of its nationals ordered removed from the United States. ECF No. 1 ¶ 15. Accordingly, on February 11, 2003, the Government released Vu into the community on an OSUP. ECF No. 6-4. As part of his OSUP conditions, Vu was required to remain law-abiding, assist the Government in obtaining travel documents, and report for in-person check-ins. *Id.* at 1–2.

After being released on the OSUP, Vu was twice convicted of domestic assault. ECF No. 6 ¶¶ 10–11. He has also failed to report for in-person check-ins with Immigration and Customs Enforcement ("ICE") since 2019. *Id.* ¶ 15. On February 17, 2026, Vu was arrested by state law enforcement for first-degree possession and sale of cocaine. *Id.* ¶ 13; ECF No. 1 ¶ 20. ICE officers lodged a detainer for Vu and subsequently arrested him on May 12, 2026, at the Olmsted County Jail in Rochester, Minnesota. ECF No. 6 ¶ 14. That same day, ICE issued a notice revoking Vu's OSUP because he was "not in compliance" with its conditions. ECF No. 6-6 at 1. Specifically, the notice explained that Vu had failed to provide ICE with a valid passport or travel document, failed to check in with ICE since

2019, and had been recently arrested for the possession and sale of illegal drugs. *Id.* The Proof of Service section of the notice indicates that it was served on Vu on May 13, 2026. *Id.* at 2. On May 12, 2026, ICE officers conducted an informal interview of Vu; Vu declined to make a statement. *Id.* at 3. Vu remains detained at the Sherburne County Jail in Elk River, Minnesota. ECF No. 6 ¶ 17.

On June 13, 2026, Vu filed a petition for a writ of habeas corpus, alleging that his immigration detention is unlawful. ECF No. 1. Specifically, Vu asserts that (1) he was arrested by ICE without a warrant, in violation of the Fourth Amendment and federal statutes governing warrantless arrests; (2) the Government violated its own regulations governing revocation of an OSUP; and (3) his detention violates his due process rights. *Id.* ¶¶ 77–100. The Court ordered the Government to respond to Vu's petition no later than June 22, 2026, with any reply from Vu due by June 25, 2026. ECF No. 3. Both the Government and Vu timely provided that briefing. ECF Nos. 5, 7.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Federal regulations require ICE to release a noncitizen ordered removed from the United States on an OSUP if there is no significant likelihood that the noncitizen will be

3

removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001) ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Once ICE releases a noncitizen on an OSUP, ICE's ability to re-detain that noncitizen is constrained by its own regulations. Relevant here, an OSUP may be revoked, and the noncitizen may be re-detained, in two circumstances: (1) if the noncitizen violates the OSUP's conditions; or (2) if circumstances change such that ICE determines the noncitizen's removal is significantly likely in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1)–(2). In either case—an OSUP violation or changed circumstances—ICE must notify the noncitizen "[u]pon revocation" of the "reasons for revocation of his or her release" and "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). As part of that informal interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated" the OSUP's conditions. *Id.*

Here, as Vu astutely observes, ECF No. 7 at 26–28, Vu was served with the notice of revocation on May 13, 2026, a day *after* ICE conducted his informal interview. ECF No. 6-6 at 2–3. The informal interview is designed to offer the noncitizen "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). But Vu could not have reasonably been expected to "respond to the reasons for revocation

4

stated in the notification" if he had not received the notification at the time of his interview. This Court previously addressed analogous facts in another case and determined that providing the notice of revocation *after* conducting the informal interview violates 8 C.F.R. § 241.13(i)(3). *See Sunee T. v. Noem*, No. 26-cv-1638 (LMP/DTS), ECF No. 9 at 6 (D. Minn. Mar. 11, 2026). The Court adheres to *Sunee T.* and orders the same remedy here that it did there: release on the preexisting OSUP.[3]

The Court is unpersuaded by the Government's attempt to minimize the importance of following its own regulations. *See* ECF No. 5 at 15–17. ICE promulgated 8 C.F.R. § 241.13(i)(3) "to provide noncitizens with the fundamental due process protections that courts have found to be constitutionally required." *Pedro O. v. Noem*, No. 26-cv-361 (ECT/LIB), 2026 WL 608314, at *3 (D. Minn. Feb. 27, 2026) (citation omitted), *report and recommendation adopted*, 2026 WL 615415 (D. Minn. Mar. 4, 2026). And the core of procedural due process is notice and the opportunity to be heard. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Consequently, the "opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian v. Bondi*, No. 25-cv-22914-RAR, 2025 WL

---

[3] Vu's release is likely a Pyrrhic victory because, as even Vu concedes, ICE had sufficient reason to revoke his OSUP, given that he violated the conditions of his OSUP six ways to Sunday. *See* ECF No. 6-6 at 1 (ICE's revocation notice explaining that Vu had failed to provide ICE with a valid passport or travel document, failed to check in with ICE since 2019, and had been recently arrested for the possession and sale of illegal drugs); ECF No. 6 ¶¶ 10–11 (listing Vu's other criminal convictions while on his OSUP); *see also* ECF No. 7 at 27–28 (conceding that failing to check in with ICE violated the OSUP's conditions, although disputing that Vu's pending criminal charge and failure to secure a travel document violated the OSUP). Accordingly, nothing forecloses ICE from revoking Vu's OSUP in the future—provided it follows the proper procedures.

2604573, at *9 (S.D. Fla. Sept. 9, 2025); *see Emilio S. R. G. v. Mullin*, No. 26-cv-2189 (KMM/DLM), 2026 WL 1810416, at *2 (D. Minn. June 24, 2026).  It may well be true, as the Government asserts, that Vu "would enjoy only a moment or two of free[dom] before being taken right back into custody."  ECF No. 5 at 17.  But it is a moment of freedom to which Vu is entitled, as brief as it may be.[4]

A final word on a procedural skirmish that has broken out among the parties.  The Government complains that Vu's habeas petition was not properly verified because it was signed by Vu's attorney and should be denied for that reason.  ECF No. 5 at 4–5.  A petition for a writ of habeas corpus must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  A person acting on behalf of a habeas petition might sign and verify the petition because of the petitioner's "inaccessibility, mental incompetence, or other disability."  *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).  In explaining this rule, one early American court explained that it was a "frequent practice" to present habeas petitions "in deportation cases signed and verified by others than the person detained" because "often for lack of time, . . . it [is] impossible to present a petition signed and verified by the person detained."  *United States ex rel. Funaro v. Watchorn*, 164 F. 152, 153 (S.D.N.Y. 1908).[5]

---

[4]   Because the Court grants relief on Vu's regulatory claim, it does not reach his constitutional and statutory claims.

[5]   In *Whitmore*, the Supreme Court explained that Congress eventually codified the rule from *Funaro* in 28 U.S.C. § 2242.  *Whitmore*, 495 U.S. at 162–63.

6

That concern rings true nearly 120 years later.  As courts in this District have observed over the last several months, ICE has been less than diligent in communicating with detainees and their counsel regarding a detainee's circumstances of detention and has "transferred detainees frequently, quickly, without notice, and often with no way for attorneys to know where or for how long their clients will be at a given facility." *Advocs. for Hum. Rts. v. U.S. Dep't of Homeland Sec.*, No. 26-cv-749 (NEB/DLM), 2026 WL 850270, at *19–23 (D. Minn. Mar. 26, 2026); *see Guadalupe O. G. v. Bondi*, No. 26-cv-820 (KMM/DLM), 2026 WL 296370, at *2 (D. Minn. Feb. 4, 2026); *Aleksander B. v. Trump*, No. 26-cv-170 (KMM/DJF), 2026 WL 172435, at *3 (D. Minn. Jan. 22, 2026).  These circumstances—notably, created by the Government—no doubt present the sort of "inaccessibility" and "lack of time" that justifies an attorney to act on a petitioner's behalf in signing and verifying a habeas petition. *Whitmore*, 495 U.S. at 163; *Funaro*, 164 F. at 153.  Moreover, the whole point of requiring verification in a habeas petition is to prevent "intruders or uninvited meddlers" from filing habeas petitions for complete strangers. *Whitmore*, 495 U.S. at 164.  Clearly, Vu's counsel is not an uninvited meddler: he has been retained by Vu and spoke with Vu about the circumstances of his arrest and detention.  ECF No. 1 at 32.  Under these circumstances, the Court is not inclined to deny Vu's habeas petition simply because it lacks his John Hancock. *See Quinn v. Dooley*, 272 F. Supp. 2d 839, 845 (D.S.D. 2003) (explaining that a court, "if it sees fit, may disregard" defects in the verification of a habeas petition).

The Government claims that improper verification leads to inaccuracies in habeas petitions, ECF No. 5 at 5, but that concern has not been borne out in this petition.  For

example, the Government argues that Vu's statement that he was arrested without a warrant was false. *Id.* But that's not really what the petition says: rather, Vu acknowledges that ICE had a Form I-205 warrant of removal, but he argues that his arrest was nevertheless warrantless *as a legal matter* because ICE did not serve a warrant on Vu at the time of arrest. ECF No. 1 ¶¶ 21, 26–27 ("While [ICE] had a warrant of removal, they were obligated to serve it on [Vu] at the time of his arrest."). Although this Court disagrees that service of an administrative warrant is necessary to effectuate a warranted arrest, *see Abraham M. v. Mullin*, No. 26-cv-2609 (LMP/DJF), 2026 WL 1864079, at *2 (D. Minn. June 29, 2026), that view is not uniformly shared in this District, *see, e.g.*, *Hector J. A. S. v. Shea*, No. 26-cv-2242 (JRT/DLM), ECF No. 10 at 5–6 (D. Minn. May 6, 2025), so it was not frivolous for Vu to make that assertion in his petition.

The Government also argues that Vu falsely alleged that he "was not informed of the reason for his revocation or otherwise served with a valid revocation." ECF No. 5 at 5. That allegation turned out to be true: as the Court has explained, the service of the notice of revocation was improper because it was provided to Vu only after his informal interview. ECF No. 6-6 at 2–3.

As explained above, Vu is entitled to habeas relief, so the Court will order his release subject to the conditions in his preexisting OSUP.

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.    Vu's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2.      The Government is **ORDERED** to release Vu from custody by no later than 5:00 p.m. CDT on July 3, 2026, subject to and in accordance with the conditions in his preexisting Order of Supervision; and

3.      No later than 5:00 p.m. CDT on July 6, 2026, the Government is **ORDERED** to provide a status update affirming that Vu was released from custody in accordance with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 1, 2026                         *s/Laura M. Provinzino*
                                             Laura M. Provinzino
                                             United States District Judge

9